Wilson *v.* Pope.

New trial granted.

[ONONDAGA GENERAL TERM, October 1, 1861. *Bacon, Allen, Mullin* and *Morgan,* Justices.]

---

WILSON, adm'r *de bonis non,* &c., *vs.* POPE.

In an action upon a bond, the obligor proved the payment, by him, of the principal and interest due thereon, in February, 1857. To overcome this proof, the plaintiff was allowed to prove an indorsement upon the bond, in the handwriting of the obligee, dated in February, 1858, of a payment of the interest then due; also the declarations of the obligee, made in March, 1858, before going to the house of the obligor, and while on his way there, in the absence of the obligor, that the bond was still unpaid, and that he

Wilson v. Pope.

was going for his interest upon it. *Held* that these acts and declarations of the obligee were inadmissible, under the general rules of evidence which exclude the acts and declarations of a party, made in the absence of his adversary, as evidence in his own favor; they not being in any sense a part of the *res gestæ*, or of any transaction with the obligor. MORGAN, J. dissented.

*Held, also,* that whether the indorsement made in 1858 was or was not favorable to the party making it, depended entirely upon the question whether the principal debt was paid in 1857, which was the issue to be determined; and hence the indorsement could not be legitimate evidence to establish the fact, to wit, the non-payment in 1857, upon which it depended for admissibility.

*Held, further,* that evidence showing the amount of money deposited by the obligee in the bank with which he kept an account during the months of February and March, 1857, was inadmissible; the inference that he did not receive the money, because he did not deposit it in a particular bank, being too remote.

THIS was an action upon a bond given by the defendant to Noah Stern, deceased, dated February 28, 1849, conditioned for the payment of $600 in payments of $200 each, on the 1st days of March, 1853, 1854 and 1855, with interest annually. It was admitted that the interest had been regularly paid up to and including February 28, 1857; and the defendant claimed and alleged that on that day he paid both principal and interest to the obligee. The obligee died July 18, 1858, and the bond and the accompanying mortgage were found among his papers, with other vouchers of a like character. Upon the trial, before MORGAN, justice, the plaintiff produced the bond and mortgage, and upon the bond were indorsements of the annual payments of interest for each year; the last of which was dated February 28, 1858. The plaintiff was permitted to prove, under objection and exception by the defendant, that the several indorsements were in the handwriting of the deceased obligee; and under a like objection and exception he was permitted to read the indorsements to the jury; the justice presiding ruling that the indorsements on the bond, including that of 1858, were competent evidence. There were other dealings between the defendant and the obligee, and in March, 1858, the obligee was

Wilson *v.* Pope.

at the house of the defendant, and evidence was given of a payment of money, on that occasion, by the defendant to him, and the defendant gave evidence tending to prove that such payment was made upon other indebtedness.    The plaintiff was allowed to prove, under objection and exception by the defendant, the declarations of the obligee before going to the house of the defendant, and on his way there, and in the absence of the defendant, that the bond was still unpaid and that he was going for his interest upon it.    Under a like objection and exception the plaintiff proved the amount of money deposited by the obligee, in the bank with which he kept an account, during the months of February and March,  1857.    The jury rendered a verdict for the plaintiff for the full amount of the bond and interest, and the defendant, upon a bill of exceptions, moved for a new trial.

*D. M. K. Johnson,* for the defendant.

*F. Kernan,* for the plaintiff.

ALLEN, J.    The acts and declarations of the plaintiff's testator, the obligee in the bond, which were given in evidence to the jury to overcome the proof of payment in February, 1857, were inadmissible under the general rules of evidence which exclude the acts and declarations of a party made in the absence of his adversary, as evidence in his own favor. The declarations of a third person entirely disinterested are ordinarily inadmissible as evidence of the facts stated, and the individual must be called as a witness, if living; and if deceased, his declarations are nevertheless excluded, as they would be but hearsay and secondary evidence of the alleged facts.    Unless, then, the evidence offered and given comes within some of the very few exceptions to the general rules referred to, it should have been excluded, and its admission was error.    In a single class of cases the acts of a party in interest, in the ordinary course of business, and when proved

to have been done at the time they purport to have been done, and when they were against his interest, have been allowed in evidence in his favor. To overcome the presumption of payment arising from lapse of time, or to take a case out of the statute of limitations, an indorsement on a bond or note, made by the obligee or promisee, is admissible in evidence when shown to have been made at the time of its date, and when its operation would be against the interest of the party making it. The indorsement must be made before the remedy has been impaired by lapse of time. (1 *Greenl. Ev.* § 121.) The leading case establishing this exception to the general rules of evidence is that of *Searles* v. *Lord Barrington*, (2 *Strange*, 821; 8 *Mod.* 278, and 2 *Ld. Raym.* 1370.) The action was upon a bond given in 1697, and sued by the representatives of the deceased obligee in or after 1723. The obligor died in 1710, and the obligee died some time after. The indorsements relied upon purported to have been made, the one in 1699, and the other in 1707, and before the remedy was impaired by lapse of time. And it would seem that there was some evidence that they were made at their respective dates. The case has been adopted and followed, with the qualification to the rule supposed to be authorized by it, to wit, that the indorsements must be in fact made before the presumption of payment arises, or they will be inadmissible in evidence. (*See per Baily, B., Gleedow* v. *Atkin*, 1 *Cromp. & Mees.* 410, and *per Ld. Hardwicke*, 2 *Ves.* 43.) *Roseboom* v. *Billington* (17 *John.* 182) is in point. Roseboom sued Billington on a note dated January 9, 1808, and the action was brought in 1817. The plaintiff, to take the case out of the statute of limitations, offered to prove an indorsement of a partial payment on the note, in his own handwriting, dated October, 1811. It was rejected, and the plaintiff brought error. The judgment of the common pleas was affirmed, upon the ground that there was no evidence that the indorsement was made at a time when its operation would have been against the interest of the party making it.

Spencer, C. J. says, " It is a fundamental principle that the private ex parte acts of an individual shall not be evidence for him, unless those acts were in collision with his interest at the time.    To admit evidence, of the party's own creating, I consider repugnant to every sound principle of law.    Declarations by a party in his own favor never can be admitted, and herein consists the difference between his declaration that he had received a partial payment and his written acknowledgment of such payment.    They are liable to the same objection, as coming from an interested source.    Here the indorsement on the note was favorable to the plaintiff's interest, for he thereby repels the operation of the statute of limitations and names the balance ; whereas without such indorsement, the demand would be barred."    A payment of interest after the time of the alleged payment in fact of the principal, would be strong and indeed conclusive proof of the untruth of the allegation of payment, and to this point the indorsement was submitted to the jury as evidence, assuming the fact in dispute that it had not been paid ; and the indorsement was against the interest of the party making it, but was entirely immaterial, as there was no controversy as to the amount due if the principal had not been paid.    If, on the other hand, the principal had been paid, the indorsement was favorable to the party making it, and was inadmissible.    Whether the indorsement in 1858 was or was not favorable to the party making it, depends entirely upon the question whether the principal debt was paid in 1857, which was the issue to be determined ; and it follows that the indorsement cannot be legitimate evidence to establish the fact, to wit, the non-payment in 1857, upon which it depends for admissibility, and which, if established by other evidence, would render the indorsement unnecessary.    When a bar growing out of lapse of time or depending on the statute of limitations is relied upon, on its being shown that the indorsement was made, the law determines whether it was, when made, favorable or unfavorable to the party making it.

It is to reason in a circle to say that the indorsement was unfavorable to the party making it because it acknowledged the partial payment of an existing debt, and that the debt was an existing debt because the indorsement proves the payment of interest at that date. (*See Freeman* v. *Kelly, Hoff. Rep.* 93.) The justice ruled that the indorsements were competent evidence, and they were submitted with the other evidence, upon the only issue in the case, and necessarily had more or less influence on the minds of the jury. As the acts and declarations of the obligee they were not competent evidence in behalf of his representatives, and should have been excluded.

The declaration of the obligee in March, 1858, concerning the debt, and that it was still unpaid, was, if possible, still more incompetent. It was in no sense a part of the *res gestœ*, or a part of any transaction with the defendant, any more than any ex parte declaration he may have made concerning their dealings before or after the interview with the defendant. No declarations that he might make, before or after, will affect the defendant, or qualify or give character to the transactions between the parties. It doubtless was competent, as suggested by the plaintiff's counsel, to know what the obligee went to the defendant's office for, on that day; but it should have been proved by what he did, not by his own ex parte declarations. They did not accompany any act of the obligee which was properly evidence·in his favor, and were not connected with any act. It was a casual conversation with the witness, not influencing or designed to influence or affect the dealings or relations of the parties to the bond.

The evidence in relation to the bank deposits of the obligee and testator was also inadmissible. The inference that he did not receive the money because he did not deposit it in a particular bank, was quite too remote to be·legitimate, and yet it is quite palpable that the evidence must have had its weight with the jury.

Wilson *v.* Pope.

The motion for a new trial must be granted; costs to abide the event.

BACON and MULLIN, Justices, concurred.

MORGAN, J. (dissenting.)   The defendant claimed that he paid up the bond and mortgage in full, February 27, 1857, and he produced Noah Stern's receipt of that date, purporting to be in full of principal and interest.   On the production of the receipt, in the handwriting of the defendant, it appeared that the words indicating payment of the principal might have been written in after it was signed by Noah Stern.   It was claimed by the plaintiff that the defendant did not in fact pay the principal on the bond and mortgage, but only the interest.   To maintain this, he produced and proved that the bond and mortgage were still in possession of Noah Stern at the time of his death, with indorsements of interest, only, made by Stern after February 27, 1857.   This was objected to.   The plaintiff also proved that Noah Stern in fact went to the defendant's house, ostensibly to collect the interest on the bond and mortgage, the next year after February 27, 1857.   This evidence was also objected to.   Without doubt these circumstances had considerable weight with the jury, in coming to the conclusion that the bond and mortgage had not been paid as claimed by the defendant.

It will be observed that no exceptions are taken to the charge of the judge.   It is therefore mere assumption to say that these circumstances were received as competent evidence to prove the *actual payment* of interest by the defendant after February 27, 1857.   If they were competent for any purpose, it is to be presumed that the judge gave the proper instructions to the jury as to the effect to be given to the evidence.   In my opinion this was a case where such evidence was competent, not indeed to prove the fact of such payment of interest, but as a circumstance tending to prove that the bond and mortgage had not in fact been paid as claimed by the defendant.   They showed that the conduct of the parties

was inconsistent with the claim now made by the defendant. If he had paid up the mortgage it was not to be expected, in the usual course of business, that Stern would still retain it in his possession as a valid obligation, and further that he should a year afterwards go to the mortgagor, ostensibly to collect the interest, and then make an indorsement that the interest had been paid. It is not to be presumed that Noah Stern then undertook to commit a fraud. It would be a singular fallacy to shut out evidence of circumstances which make for a party, upon the hypothesis that they were manufactured in anticipation of and in order to perpetrate a fraud upon the adverse party.

The rule, I think, is to allow circumstances which happen in the ordinary course of dealings between the parties before the dispute arises to be given in evidence, when the question to be decided depends upon presumptive or circumstantial evidence. The weight to be given to them rests entirely with the jury. These circumstances may be used as an *aid*, as well as a *test*, of direct evidence. (*Burrill*, 226.) *Wilson*, in his treatise on circumstantial evidence, (*p. 54*,) mentions a species of evidence which he denominates "moral indications afforded by the relations and language and conduct of the party." The issue in this case necessarily involves to some extent the character of both parties. And the conduct of each party as it tended to prove or disprove their respective allegations was, in my opinion, clearly admissible as part of the *res gestæ*. Unless this species of evidence is admitted, in such a case, it may be said that although the circumstances all tend to establish the fraud, if not the forgery, of the defendant, the rules of law will not permit the plaintiff to resort to the only evidence by which the fraud can be established. I think the rules of evidence were not violated in the admission of the evidence objected to, and that the judgment should be affirmed.         New trial granted.

[ONONDAGA GENERAL TERM, October 1, 1861. *Bacon, Allen, Mullin* and *Morgan,* Justices.]